### STATE OF CONNECTICUT v. DANA MOZELL
### (13488)

Landau, Heiman and Daly, Js.

---

[7] See part III.

Argued September 26, 1995—decision released January 2, 1996

*Charles D. Ray*, with whom, on the brief was, *William H. Narwold*, for the appellant (defendant).

*John A. East III*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Dana Mozell, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a) and manslaughter in the second degree as an accessory in violation of General Statutes §§ 53a-56 (a) (1)[1] and 53a-8 (a).[2] On appeal, the defendant claims that the trial court improperly (1) exercised its discretion and allowed into evidence prior acts of misconduct by third persons to establish motive, (2) denied his request for a continuance to permit an additional witness to testify, and (3)

---

[1] General Statutes § 53a-56 (a) provides in pertinent part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[2] General Statutes § 53a-8 (a) provides in pertinent part: "A person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

instructed the jury as to the requisite mental element of accessorial liability. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant was a member of a gang that sold illegal narcotics in New Haven. For several weeks preceding the death of the victim, Richard Coleman, the defendant's gang was involved in a dispute with Shelton Tucker, Sean Green and Rodney Lewis over control of the drug trade on Arthur Street. On December 29, 1989, at approximately 6:30 p.m., several members of the defendant's gang, including the defendant, his brother Troy Mozell, Eric Morton, Ronald Douglas and Matthew Bowden arrived at Arthur Street in a gray Jeep Cherokee. Meanwhile, Tucker and Lewis were walking across Arthur Street toward Tucker's residence at 2 Arthur Street. The victim, a bystander, was walking past Tucker's residence.

As Tucker and Lewis crossed Arthur Street, the defendant, together with Morton and Bowden, exited the Jeep carrying handguns. Tucker and Lewis noticed the vehicle and the gunmen and began to run toward Tucker's residence. The trio chased Tucker and Lewis and simultaneously fired their weapons at them several times. To avoid the gunshots, Tucker and Lewis hid behind a vehicle that was parked in front of Tucker's house. When the shooting ceased, Tucker and Lewis saw that the victim was lying on the sidewalk in front of 6 Arthur Street. The victim was struck in the chest by a single nine millimeter bullet and died later that evening.

Tucker and Lewis informed Detective Samuel Cotto of the New Haven police department that Troy Mozell and other members of the defendant's gang were responsible for the shooting. Lewis specifically named Robert Henderson and Douglas, and described a third participant as "a kid in a green jacket." The New Haven

police obtained search warrants for Henderson's apartment at 288 Front Street, the defendant's apartment at 16 Peck Street and the gray Jeep Cherokee that was owned by the defendant's mother, Alice Mozell. The police recovered two loaded nine millimeter ammunition clips from Henderson's apartment, six live nine millimeter cartridges from the defendant's apartment, and a green jacket from inside the Jeep.

The police initially arrested only Troy Mozell and Douglas. At a probable cause hearing on February 27, 1990, Tucker was called to testify. While testifying, Tucker saw the defendant sitting in the courtroom gallery among several other spectators and recognized him as one of the shooters. Tucker's identification of the defendant led police to investigate further and resulted in the defendant's arrest.

I

The defendant first claims that the trial court improperly admitted testimony that (1) he was a member of a gang, (2) the gang was involved in a dispute with a rival gang that included Tucker and Lewis, and (3) the dispute was marked by recent violent confrontations. He argues that the challenged evidence was inadmissible because it constituted evidence of prior misconduct by third persons. The evidence, he asserts, was more prejudicial than probative because it improperly attempted to establish his guilt by proof of his association with a gang.

The following facts were established from the challenged evidence. Several days prior to the fatal shooting, Tucker and Lewis confronted Thomas Sanders, another member of the defendant's gang, in front of Tucker's residence on Arthur Street. Tucker and Lewis shoved Sanders and instructed him not to deal drugs in front of Tucker's residence. Later that night, Henderson, Douglas, and Bowden returned to Arthur Street and

threatened Tucker and Lewis with a gun. They said that unless Tucker and Lewis left Sanders alone there would be trouble. Earlier on the day of the fatal shooting, Troy Mozell drove past Tucker's house in the gray Jeep and fired several gunshots from the vehicle at Tucker and Lewis as they stood on the front porch.

"[T]here are two components to relevant evidence: materiality and probative value. . . . [E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Wieler*, 35 Conn. App. 566, 576–77, 645 A.2d 1032 (1994), aff'd, 233 Conn. 552, 660 A.2d 740 (1995). "Evidence of motive is a highly relevant factor for assessing the guilt or innocence of a defendant." *State* v. *Murdick*, 23 Conn. App. 692, 696, 583 A.2d 1318, cert. denied, 217 Conn. 809, 585 A.2d 1233 (1991). Relevant evidence, although prejudicial in nature, "is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." *State* v. *Ramsundar*, 204 Conn. 4, 15, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). "We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994).

The challenged evidence was relevant to prove the defendant's motive. The evidence tended to establish that the defendant had conspired with members of his gang to kill a rival drug dealer to protect the gang's drug sales territory. It established that the defendant participated in the shooting that resulted in Coleman's death. The trial court properly conducted the requisite balancing test before it ruled that the challenged evidence was admissible. The court conducted several hearings outside the presence of the jury, heard lengthy

offers of proof from counsel, and carefully weighed the probative value of the evidence against its adverse impact before rejecting the defendant's claim that the evidence was impermissibly prejudicial. Making every reasonable presumption in favor of the trial court's ruling, we cannot conclude, under the circumstances of this case, that the trial court abused its discretion by admitting the challenged evidence.[3]

## II

The defendant next claims that the trial court deprived him of his state and federal constitutional rights of compulsory process and due process of law when it denied his motion for a continuance, made at the conclusion of the evidence, to permit him to bring an additional witness to testify. The defendant asserts that the witness would have directly refuted the testimony of a state's witness who testified that he had heard the defendant admit his involvement in the shooting.

The following additional facts are relevant to the resolution of this claim. Immediately after the shooting, the defendant and the other gunmen returned to the Jeep, fled from the Arthur Street area, and drove to Henderson's apartment at 388 Front Street. Douglas testified for the state that several people, including Daryl Jackson, were present and playing cards when the defendant and Bowden arrived after the shooting and announced that they had just engaged in a shootout with Tucker and Lewis. Troy Mozell, who was also present, informed the group that someone had been killed. Upon hearing this, the defendant and Bowden began arguing with each other over which one of them had fired the fatal shot, each trying to blame the other.

On October 8, 1992, the defendant notified the trial court that he had two witnesses ready to testify and

---

[3] The challenged evidence was not offered to show the prior bad acts of third parties as the defendant claims; it was offered to prove motive.

that he intended to call Jackson as a third witness. Because Jackson was recovering from a gunshot wound, the defendant requested a continuance for at least one week. The court reserved its decision on the continuance until after the defendant's available witnesses testified. On October 9, 1992, after the testimony of the available witnesses, the defendant renewed his request for a continuance and represented that Jackson had been served with a subpoena to compel his attendance on the next scheduled court date, Tuesday, October 13, 1992. As part of his offer of proof, the defendant submitted a statement signed by Jackson in which Jackson claimed that he was not present at Henderson's apartment on the night of the shooting. Jackson further claimed that neither the defendant nor Bowden had admitted their complicity in the shooting to Jackson at any other time. The state objected to the continuance claiming that the proffered testimony was neither relevant nor probative. The trial court denied the motion for continuance.

"The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. *State* v. *Aillon*, 202 Conn. 385, 394, 521 A.2d 555 (1987). A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 538, 429 A.2d 801 (1980); *State* v. *Beckenbach*, [198 Conn. 43, 47, 501 A.2d 752 (1985)]. To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. *State* v. *Beckenbach*, supra [47]. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at*

*the time the request is denied.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Hamilton*, 228 Conn. 234, 239–40, 636 A.2d 760 (1994).

For us to determine whether the trial court's denial of the request for a continuance was arbitrary, we must first determine whether the court properly ruled on the relevancy of Jackson's testimony. "[T]here are two components to relevant evidence: materiality and probative value. . . . [E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Wieler*, supra, 35 Conn. App. 576–77.

The proffered testimony of Jackson would not have had the tendency to establish the existence of a material fact. At best, Jackson's testimony would have established that Jackson was not present at Henderson's apartment, as Douglas testified, when the defendant and Bowden arrived there after the shooting. It would not have directly contradicted, contravened or negated Douglas' testimony that Douglas overheard the defendant and Bowden argue about which of them had fired the shot that killed Coleman. To the extent that Jackson's testimony was offered for the purpose of impeaching Douglas, it would have indicated only that Douglas was mistaken as to the identity of one of several people present in the apartment, which is a collateral matter. Thus, the trial court properly found that Jackson's testimony would not have been relevant.

Because the trial court properly determined that the proffered testimony of Jackson was not relevant, we conclude that the court did not act arbitrarily, and, therefore, did not abuse its discretion by denying the continuance.

## III

The defendant's last claim is that the trial court improperly instructed the jury on the mental state required for accessorial liability for manslaughter in the second degree. He argues that the court improperly informed the jury that it could convict the defendant upon a finding that he had "recklessly" aided the principal in causing Coleman's death. He asserts that the court's instruction was contrary to the statutory scheme and misled the jury into convicting him of manslaughter in the second degree on a finding of a less culpable mental state than that required by § 53a-8. The defendant failed to preserve this claim at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[4]

The first two prongs of *Golding* are satisfied. The defendant has provided an adequate record for review and has alleged a claim of constitutional magnitude arguing that the trial court failed to instruct the jury properly on an essential element of the crime charged. See *State* v. *Tweedy*, 219 Conn. 489, 510, 594 A.2d 906

---

[4] Under *Golding*, the defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 239–40.

(1991); *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988). We must now determine whether the alleged error in the jury instructions clearly misled the jury and clearly deprived the defendant of a fair trial.[5]

"In reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . The purpose of a charge is to call the attention of the members of the jury, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Lemoine*, 39 Conn. App. 657, 665–67, 666 A.2d 825 (1995). In evaluating the propriety of the supplemental charge, we must examine both the main and supplemental charge as a whole. *State* v. *Williams*, 199 Conn. 30, 41, 505 A.2d 699 (1986).

A review of the main and supplemental charges reveals that the trial court carefully and correctly instructed the jury as to the elements of accessorial liability and as to each of the homicide charges, including manslaughter in the first and second degrees, and criminally negligent homicide. The court thoroughly explained the meaning of the terms "intent" and "recklessness" as applied to the charges and properly instructed the jury on the requisite mental state required to establish accessorial liability. On twelve separate occasions, in both the main and supplemental charges,

---

[5] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

the court properly instructed the jury that it could find the defendant guilty as an accessory if it found that he solicited, requested, commanded, importuned or "intentionally" aided another person in the commission of one of the underlying homicide offenses. The record further discloses, however, that the court also improperly instructed on accessorial liability four times by stating that a person is an accessory when he "recklessly" solicits, requests, commands, importunes or "intentionally" aids the principal. The defendant asserts that this flawed instruction misled the jury into convicting him of manslaughter in the second degree on a lesser mental state than that required for conviction and thereby deprived him of a fair trial.

While it is of paramount importance that jury instructions be clear and accurate regarding the essential elements of the crime charged; *State* v. *Griffin,* 175 Conn. 155, 163, 397 A.2d 89 (1978); they " 'need not be exhaustive, perfect or technically accurate . . . .' " *State* v. *Theriault,* 38 Conn. App. 815, 819, 663 A.2d 423 (1995). Applying the standard of review demanded of this court when the defendant claims that the instructions of the trial court violated constitutional due process, we cannot say, reading the instructions as a whole, that they were so deficient that it was reasonably possible that the jury was misled. *State* v. *Allen,* 28 Conn. App. 81, 84, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992). Although the challenged portions of the instructions were less than perfect, the requisite understanding and guidance was provided by the charge as a whole. Viewed in their entirety and measured against the factual context of the case, the main and supplemental charges sufficiently communicated to the jury that it was necessary to find that the defendant intentionally acted as an accessory before it could find him guilty under § 53a-8. There exists no reasonable possibility,

therefore, that the jury was misled or that the defendant did not receive a fair trial.

We conclude that because the defendant failed to establish that he was deprived of a fair trial, his claim fails to satisfy the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.