## STATE OF CONNECTICUT v. JOSE ORTIZ
### (13786)

Foti, Lavery and Landau, Js.

Argued September 21, 1995—decision released February 20, 1996

*Christopher L. Ulrich,* special public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's

attorney, and *C. Robert Satti*, assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55.[1] On appeal, the defendant claims that the trial court improperly (1) determined that it had jurisdiction over him so as to allow it to convict him of the lesser included offense of manslaughter in the first degree, (2) admitted evidence of prior uncharged crimes and misconduct, (3) failed to rectify its acknowledged error of admitting evidence that the defendant threatened a witness, (4) admitted evidence of a threat made against the defendant and (5) denied the defendant's written motion for appointment of new counsel. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On January 19, 1993, the victim, Teranon Watts, was walking near the intersection of Fairfield Avenue and Poplar Street in Bridgeport with James Hawkins, Ronald Miley and James Diggs. At the same time, the defendant and a second individual identified by two witnesses as "Black Mike"[2] were standing on the front porch of a rooming house located at 1523 Fairfield Avenue, a short distance away. The defendant observed Watts and the others walking nearby and stated "there goes the smart mouth niggers that is down with the Foundation."

---

[1] On May 11, 1993, the defendant was charged by information with the crimes of murder in violation of General Statutes § 53a-54a (a) and two counts of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a). In an amended information, filed on January 10, 1994, the defendant was charged with murder both as a principal and as an accessory, and three counts of attempted murder. The jury found the defendant not guilty of murder and, in accordance with the instructions of the trial court, did not consider the attempted murder counts.

[2] Black Mike was also identified by a third witness who knew him as "E."

Armed with handguns, the defendant and Black Mike then approached the group. The defendant stated, "I heard you all wanted to kill us," and then he and Black Mike began shooting at the group, firing approximately eleven or twelve rounds. As Hawkins, Miley and Diggs fled the area, Watts was struck by a bullet and fell to the ground. Watts died as a result of injuries he received from a gunshot wound to his back.

I

The defendant first claims that the trial court improperly determined, at a probable cause hearing on June 18, 1993, that there was probable cause to proceed on the murder charge. Absent probable cause, he argues, the trial court lacked jurisdiction to convict him of the lesser included offense of manslaughter in the first degree.

The resolution of this claim is controlled by this court's decision in State v. Timmons, 7 Conn. App. 457, 462, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987) (certification improvidently granted). In Timmons, we held that when a defendant is charged with the crime of murder by information, the information gives notice to him of all lesser included offenses. Id., 463. In both Timmons and the present case, "[j]urisdiction of the defendant's person was properly obtained, and retained [by the trial court] for [the defendant's] trial and conviction on the charge of manslaughter in the first degree." Id.

In this case, because the state properly charged the defendant with murder by information, we conclude that, in accordance with Timmons, the state was not precluded "from proceeding to trial against the defendant on the lesser included offense of manslaughter in the first degree . . . ." Id., 462. Because no probable cause hearing is required prior to a prosecution on a manslaughter charge; id.; we need not consider the

defendant's claim that the trial court improperly determined that it had probable cause to proceed on the murder charge.

## II

The defendant next claims that he was deprived of a fair trial and due process of law because the trial court improperly allowed a witness to testify (1) that the witness had worked as a drug runner for the defendant and knew that the defendant was a drug dealer, and (2) that the victim was selling drugs for a group of rival drug dealers. The defendant asserts that because of the highly inflammatory nature of this evidence, even if it was admissible, his conviction must be reversed because the trial court failed to provide a limiting instruction to the jury that evidence of uncharged criminal conduct is inadmissible to show the bad character of the defendant or his tendency to commit such bad acts. Without the limiting instruction, he argues, the jury was permitted to infer that the defendant was prone to commit the crime in this case.

Additional facts are necessary to create a context for our discussion. James Garner had formerly worked for the defendant for several months taking money from drug customers and returning to them with vials of crack cocaine they had purchased from the defendant. On numerous occasions, Garner had also purchased crack cocaine from the defendant for his own use. At the time of the shooting, the victim was selling drugs for a group of rival drug dealers known as the "Foundation," which had formerly sold drugs for the defendant. Although the defendant objected to the admissibility of this testimony, he did not request a limiting instruction.

"As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove

intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . [Prior misconduct] evidence may also be used to corroborate crucial prosecution testimony. . . . Moreover, we have held that such evidence may be used to complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings. . . .

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant . . . to at least one of the . . . exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the . . . evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 424–25, 630 A.2d 1043 (1993). "[E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Wieler*, 35 Conn. App. 566, 576, 645 A.2d 1032 (1994), aff'd, 233 Conn. 552, 660 A.2d 740 (1995).

Our examination of the proffered evidence reveals that the trial court properly ruled that Garner's testimony was relevant and material to more than one of the exceptions that allow evidence of uncharged misconduct. First, the court found that Garner's testimony that he had previously sold drugs for the defendant and that the defendant was a drug dealer was relevant to prove the identity of the defendant. Second, the court found that the testimony that the victim was selling drugs for another group of drug dealers was relevant to corroborate other evidence adduced prior to Garner's testimony that the victim had several vials of crack cocaine on him when he was killed.

Upon finding the challenged evidence to be relevant, the court then carefully balanced the probative value

of the challenged evidence against its prejudicial effect. Relevant evidence of prior uncharged misconduct that is prejudicial in nature "is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." *State* v. *Ramsundar*, 204 Conn. 4, 15, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). Because the entire case involved drugs and drug dealing, the court admitted the challenged testimony after finding that the evidence, although prejudicial to the defendant, was necessary to allow the jury to get the "whole flavor of this case" and to avoid having it look at the circumstances surrounding the death of the victim "in a semivacuum."

This court will uphold the trial court's ruling on the admission of uncharged misconduct evidence unless there is a manifest abuse of discretion. See *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994). It is unlikely that the evidence of the defendant's prior involvement with drugs could have shocked or influenced the jury to the extent that the defendant was deprived of a fair trial. See *State* v. *Artieri*, 206 Conn. 81, 88–89, 536 A.2d 567 (1988). Accordingly, we reject the defendant's claim that the trial court abused its discretion in admitting the challenged evidence.

The defendant further argues, however, that, even if the challenged evidence was admissible, the court committed reversible error by failing to instruct the jury that it could not use the evidence to infer that the defendant had bad character or that he had a tendency to commit the crime charged. Because the defendant failed to preserve this claim by requesting a limiting instruction at trial, he now seeks appellate review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823

(1989).[3] "We have previously held that the failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude. *State* v. *Servello*, 14 Conn. App. 88, 94–95, 540 A.2d 378, cert. denied, 208 Conn. 811, 545 A.2d 1107 (1988)." *State* v. *Ulen*, 31 Conn. App. 20, 37, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). Absent a claim of constitutional magnitude, the defendant's unpreserved claim fails to satisfy the second prong of *Golding* and is, therefore, not reviewable.[4]

The defendant also challenges, pursuant to *Golding*, the admission of certain other prior uncharged misconduct evidence adduced from Garner to which the defendant failed to object at trial.[5] It is clear from the

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

[4] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed . . . ." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

[5] On direct examination, the following testimony was adduced from Garner when the state asked him when he first saw the defendant's weapon on the night of the shooting:

"A. When they came down off the porch—well, I know they always have weapons.

"Q. What kind of weapon did you see?

"A. Nine.

"Q. And would you describe what it looked like?

"A. To my best recollection, it was—it had a black handle and silver barrel.

"Q. Had you seen this gun before?

"A. Yes, I seen it a lot of times before.

"Q. How many times had you seen it before?

"A. Once when he hit me in the head with it, and another time when they just pulled them out and had a couple shootouts over there, I saw it."

record, however, that the state was not asking questions about any specific prior acts of misconduct or crimes. Rather, the state was attempting to elicit from Garner a description of the weapon that the defendant used in this case. The validity of that conclusion is buttressed by the fact that the defendant did not object to its admission. We conclude, therefore, that the evidence was not misconduct evidence and the ruling of the court allowing its admission was proper.

### III

The defendant next claims that he was deprived of a fair trial because the trial court failed to cure adequately its acknowledged error in admitting evidence that the defendant had threatened a witness, through a third party, to prevent the witness from testifying against the defendant.

On direct examination, Garner testified that he was in court two weeks earlier in connection with his own case and met Black Mike, known to Garner as "E." E told Garner that the defendant's girlfriend informed E that Garner had testified that E and the defendant were responsible for shooting the victim. E then told Garner that they knew where he lived. After argument from counsel, the trial court permitted this testimony to be elicited before the jury.

Sometime later in the proceedings, the trial court indicated to counsel that it was reversing its ruling concerning this testimony and ruled that because there was insufficient evidence to connect the defendant with the threat made by E, the testimony could not be used to connect the defendant to the threat. The trial court immediately gave a curative instruction to the jury, which was repeated in its final charge.[6] The trial court

---

[6] The trial court instructed the jury as follows: "If you find that the threat and these statements were made, you cannot, under our law, connect here the threat for the girl's statement to the defendant. It's not permissible in

also stated that "there is no evidence that the defendant was involved in the threat," and that the jury "may not conclude that he was so involved, on this evidence."

Although the defendant did not move to strike the challenged testimony from the record, he argues that despite the curative instruction the improperly admitted evidence was highly prejudicial and served no legitimate purpose. The only way to rectify the error, he asserts, was for the court, sua sponte, to strike completely the improperly admitted testimony from the record in conformity with the rule elucidated in *State v. Ferraro*, 160 Conn. 42, 45–46, 273 A.2d 694 (1970). We are unpersuaded.

Contrary to the defendant's position, *Ferraro* is distinguishable from this case. In *Ferraro*, the trial court admitted testimony elicited from an alibi witness on cross-examination that pistols and a ski mask were found in a New York apartment that the defendant shared with the witness seven and one-half months after an elderly couple was assaulted and robbed in their Connecticut home by two assailants who wore ski masks and displayed handguns. After the state failed to connect the gun and ski mask to the defendant, the defendant moved to strike the testimony from the record. The trial court denied the motion and refused to instruct the jury to disregard the evidence. Id., 44–45. On appeal, our Supreme Court held that because the evidence could not be connected to the defendant and *"its admission against these two defendants was not*

the absence of proof of a direct connection with the defendant under our law. The statement about what the girl said was not admitted, in any event, for the truth of the matter asserted. We are really not concerned with whether it was true or false, only that it was made, and that it led to certain conduct on the part of the person known as E. The testimony was admitted to explain E's conduct. The state also claims that explains the threat to the witness, and that, in turn, the threat explains Mr. Garner's state of mind, and therefore why he was unavailable to testify on two previous days."

*justified on any other grounds suggested in the record for its admission,* the court erred in denying the motion to strike . . . ." (Emphasis added.) Id., 45.

In this case, unlike in *Ferraro,* the trial court was justified in admitting the challenged testimony. The court instructed the jury that it could use the evidence of E's alleged threat to consider "whether the threat was responsible for Mr. Garner's unavailability in court" and "the credibility of Mr. Garner and the weight you give his testimony." Moreover, the trial court in this case twice gave curative instructions to the jury,[7] the defendant did not object to either instruction, and the defendant did not move to strike the testimony from the record.

The rule is well settled that " '[t]he jury are presumed to follow the court's directions in the absence of a clear indication to the contrary.' *State* v. *Griffin,* 175 Conn. 155, 160, 397 A.2d 89 (1978); *State* v. *Glenn,* 194 Conn. 483, 497, 481 A.2d 741 (1984); *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980)." *State* v. *Negron,* 221 Conn. 315, 331, 603 A.2d 1138 (1992). Because the record is devoid of any such indication, we conclude that the trial court properly admitted Garner's testimony regarding the alleged threat.

IV

The defendant next claims that the trial court abused its discretion by allowing Miley to testify that several hours prior to the shooting Hawkins had threatened to shoot the defendant and Black Mike.[8] The defendant

[7] See footnote 6.

[8] Following an offer of proof, the trial court permitted Miley to testify that Hawkins, in the presence of Watts, Miley and an unidentified friend of the defendant, had stated that he was going to shoot the defendant and Black Mike. The conversation took place at the victim's house, and, shortly after Hawkins' statement, the unidentified person left, walking toward the defendant's house.

argues that because the threat was not made directly to him and no proof was adduced that the threat was ever communicated to him, the evidence was irrelevant and, thus, inadmissible.

A trial court's "[e]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Johnson*, 29 Conn. App. 584, 588, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993) (certification improvidently granted). In this case, the trial court found that the evidence of Hawkins' threat was relevant to allow the jury to infer the defendant's motive and to corroborate the defendant's statement made immediately prior to the shooting, "I heard you all wanted to kill us." Because we agree with the well reasoned ruling of the trial court and no novel principles of law or appellate procedure are presented by this claim, we conclude that any further discussion would serve no useful purpose. *Byrne* v. *Trice*, 170 Conn. 442, 442–43, 365 A.2d 1063 (1976).

V

The defendant's final claim is that the trial court abused its discretion in denying the defendant's motion for a continuance to change counsel. He argues that the court's refusal to grant the continuance deprived him of his right to counsel of his choice under the sixth amendment to the United States constitution and under the Connecticut constitution.[9]

"Once a trial has begun, neither a defendant's right to due process nor his right to be represented by counsel

---

[9] Because the defendant has failed to brief his claim separately under the Connecticut constitution, we refuse to review this claim under that constitution. *State* v. *Francis*, 228 Conn. 118, 122 n.3, 635 A.2d 762 (1993); *State* v. *Walker*, 33 Conn. App. 763, 766 n.1, 638 A.2d 1084, cert. denied, 229 Conn. 913, 614 A.2d 1209 (1994).

of his choice entitles him to a continuance upon demand." *State* v. *Hamilton*, 228 Conn. 234, 239, 636 A.2d 760 (1994); *State* v. *Mozell*, 40 Conn. App. 47, 52–55, 668 A.2d 1340 (1996). Appellate review of a trial court's denial of a motion for a continuance is "governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances." *State* v. *Hamilton*, supra, 250.

On January 26, 1994, the defendant's assigned counsel informed the trial court, *S. Freedman, J.*, that three times in the previous two days he had heard either directly from the defendant, or through intermediaries, that the defendant wanted new counsel.[10] William Holden, the public defender for the judicial district of Fairfield, then informed the court that the defendant wanted to obtain private counsel because there was a breakdown in the attorney-client relationship between the defendant and his assigned counsel.

The assistant state's attorney apprised the court that a motion for speedy trial was filed by the defendant on December 22, 1993, six jurors had already been chosen, and the state was ready to proceed to trial. The state further informed the court that its witnesses had been subpoenaed, and that it had had difficulty finding its witnesses in the past. The trial court then denied the motion and allowed the defendant to present his motion

---

[10] After hearing from counsel, the trial court allowed the defendant to explain why he wanted to obtain new counsel, and the following colloquy took place:

"The Defendant: Your Honor, I would like to dismiss him because a little while ago, before you went to lunch, he was just sleeping right there while you were talking. He was just sleeping, and you was talking all that time, and he was just sleeping right there. He didn't come and talk to me, he don't let me know what's going on, nothing like that.

"The Court: Is that it?

"The Defendant: Yes, sir.

"The Court: You can sit down."

to the presiding judge, *Damiani, J.*, the following morning. The motion was again denied.[11]

In reviewing the denial of the defendant's request for a continuance to change counsel, we cannot conclude that either of the denials was an abuse of the court's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The presiding judge found, inter alia, that (1) the defendant did not have the financial ability to hire private counsel, (2) the defendant's appointed counsel was competent and able, (3) there was no basis in fact to discharge appointed counsel, and (4) the defendant did not have a right to pick and choose public defenders.