STATE OF CONNECTICUT *v.* ROBERT M. BROWN
(14983)

Lavery, Heiman and Stoughton, Js.

Argued December 11, 1995—officially released May 14, 1996

*Alexander H. Schwartz*, with whom, on the brief, was *Sharon Bradley Bowler*, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom, on the brief, was *James E. Thomas*, state's attorney, for the appellee (state).

STOUGHTON, J. The defendant was convicted after a jury trial of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), and three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a). On appeal,[1] he claims that (1) the trial court improperly refused to grant him either a mistrial because of the untimely disclosure of potentially exculpatory evidence that he had previously requested or a continuance to perform dioxyribonucleic acid (DNA) and blood group testing on the untimely disclosed evidence, (2) he was denied his right to due process, to a fair trial and to present a defense because the state failed timely to disclose exculpatory evidence, (3) the trial court improperly permitted the introduction of evidence of prior bad acts, and (4) the trial court abused its discretion in denying his motion for a new trial in light of the results of the postverdict analysis of the untimely disclosed evidence. We agree with the defendant's first claim and reverse the judgment of the trial court and

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

remand the case for a new trial. Because our resolution of the first issue entitles the defendant to a new trial, we do not reach the second and fourth issues. Because the third issue is likely to recur on retrial, we address that issue despite the reversal on other grounds.

The jury could reasonably have found the following facts. In July, 1983, the female victim placed an advertisement in a newspaper for a female roommate to share her condominium. She received a telephone call in response to the advertisement on the first day it appeared. The male caller said that he was calling for his sister. He made certain inquiries and then said, "We'll be over." When asked for a time, he said that it would be about noon.

As the victim was preparing lunch at about noon, she saw a man approaching the condominium unit. Before she reached the entry, the man had already opened the door and entered. He said that he had called earlier. As the victim was showing the man through the condominium, he grabbed her and waved a knife in front of her face.

The man found a pair of socks and a belt in her bedroom, with which he gagged and bound her. He then removed her jeans and sexually assaulted her. Afterwards, he forced her to use a douche and then wiped her off with a towel. Subsequently, after warning the victim not to move, the man took the douche container with him and left. Thereafter, the victim put on her jeans and called for assistance from a neighbor.

The victim was taken to the Bay State Medical Center where she was examined and a sex crime kit was prepared. The Suffield police were informed of the incident, and the victim gave a statement in which she described her attacker. She was initially unable to identify him from an array of photographs, but in October, 1983, she did identify the defendant as her attacker

from another photographic array. She stated that she was "100 percent sure" that he was her assailant. She also identified the defendant as her attacker at trial.

The sex crime kit, which had been sent for processing to the Connecticut state police, was returned to either the Suffield police or the hospital on August 17, 1983. It was missing at the time of trial and the prosecutor was unable to determine where it had been sent. Although a warrant for the arrest of the defendant was issued in 1983, he was incarcerated in another state at that time.

On July 30, 1992, approximately one year before the trial began, the defendant filed a motion seeking, among other things, disclosure of exculpatory information or material and copies of any scientific tests or reports. Both the prosecution and the defense believed that the police had lost the sex crime kit and articles of clothing belonging to the victim. Copies of the laboratory reports were given to the defendant, together with a receipt from the laboratory for the jeans that had been worn by the victim on the date of the crime.

On July 15, 1993, during the trial, the prosecution learned that the jeans were still in the possession of the Suffield police and gave that information to the defendant. The jeans were tested and seminal fluid protein was found. The defendant, upon learning that the jeans had been located and that there was a semen stain on them, moved for a twenty-one day continuance in order to have DNA testing done. The prosecution objected because of the delay that would be caused by a continuance. The trial court denied the motion, although it acknowledged that the interests of justice required DNA testing if such tests were possible. The court decided, however, that a long delay for testing procedures would be unfair to the jury and that, to avoid additional delay, he would order DNA testing only if the jury convicted the defendant.

After the prosecution rested, the defendant called as a witness the chief toxicologist for the state of Connecticut. The toxicologist testified that a test had been done on a shirt, a pair of jeans, a bedspread and a towel. A seminal stain was found in the crotch of the jeans, but no seminal stains were found on the other items. He also had tested the sex crime kit containing blood, saliva, samples from the vaginal, rectal and oral areas, and hair pulls, all taken from the victim. No sperm or anything from anyone other than the victim was found in any of the samples. No blood typing was done because there was no sample from a suspect. Further, the toxicologist testified that DNA testing was not available in rape cases in 1983, but that such testing could have been done between 1983 and 1993.

The prosecution, outside the presence of the jury, had informed the court that blood and saliva samples taken from the victim and the defendant revealed that they had the same blood grouping, and that their antigens were so similar that the defendant could not be ruled out. The prosecution reported that two or three more days would be required to perform preliminary subgroupings of blood types and to determine whether there was sufficient material for DNA testing.

The defendant requested a continuance for subgrouping of the blood and renewed the request for a three week continuance for DNA testing. The motions were denied. The defendant also moved for a mistrial, which was denied. Thereafter, the jury returned its guilty verdict.

Before sentencing, in accordance with the trial court's suggestion, a cutting from the jeans was sent to the Federal Bureau of Investigation laboratory for restriction fragment length polymorphism (RFLP) DNA testing. No result could be obtained, however, because the DNA was either insufficient or too degraded. A

second cutting was sent for polymerase chain reaction (PCR) DNA testing. Both cuttings were probed for the DQ alpha type.

The test results were not available for eight months. The test results indicated that the defendant could not be excluded as the donor of the semen in the first cutting, nor could the victim, her husband, who at the time of the assaults was her boyfriend, or 20 percent of the population be excluded. The defendant, however, was excluded as a possible donor of the semen in the second cutting. In denying the defendant's motion for a new trial, the court stated its belief that the inability to put the evidence before the jury was not materially injurious. We disagree.

I

The defendant claims that the trial court abused its discretion by refusing to grant either a mistrial or the requested continuance for DNA testing on the semen stain after the untimely disclosure of the jeans and sex crime kit.

Whether to grant a request for continuance is within the discretion of the trial court, and a reviewing court must make every reasonable presumption in favor of the proper exercise of the trial court's discretion. *State* v. *Mozell*, 40 Conn. App. 47, 53, 668 A.2d 1340 (1996). We must look at the circumstances of the case, particularly the reasons offered for the request, in order to determine whether the denial of the request was arbitrary. Id., 54. The trial court denied the motion for a continuance in part because of the inconvenience to the jury of a lengthy continuance. Further, the trial court was aware that a mistrial had been declared in this case earlier in the year and wanted to avoid another mistrial. The defense, however, was mistaken identity and a DNA test result excluding the defendant would have strengthened that defense.

"[A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . On appeal, the defendant bears the burden of establishing that the occurrence was so prejudicial, in the context of the trial as a whole, that it denied him a fair trial. . . . The decision to grant or deny a motion for a mistrial is within the sound discretion of the trial court. . . . *State* v. *Traficonda*, 223 Conn. 273, 282, 612 A.2d 45 (1992). The trial court also has broad discretion in determining whether the defendant was prejudiced." (Internal quotation marks omitted.) *State* v. *Pettway*, 39 Conn. App. 63, 72, 664 A.2d 1125, cert. denied, 235 Conn. 921, 665 A.2d 908 (1995). We conclude that the trial court's denial of an opportunity for the defense to have the DNA tests completed prior to the conclusion of the trial and an opportunity to put that evidence before the jury was so prejudicial, in the context of the trial as a whole, that it denied the defendant a fair trial.

The defendant, therefore, was entitled to either a continuance or the declaration of a mistrial. See *Arizona* v. *Youngblood*, 488 U.S. 51, 55, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). The trial court should have granted the defendant's motion for a continuance. Having failed to do so, the defendant was entitled to the granting of his motion for a mistrial. We therefore reverse the judgment of the trial court and remand for a new trial.

## II

Because our resolution of the first issue is dispositive, we do not address the second and fourth issues. We do, however, address the third issue because it may recur on retrial. That issue is whether the trial court improperly permitted introduction of evidence of prior acts that were not sufficiently similar to acts alleged to have occurred in the commission of the crime at issue.

The prosecution was permitted to offer testimony that in mid-July, 1983, a young woman placed an advertisement in a newspaper seeking a female roommate for an apartment in Agawam, Massachusetts. A man telephoned and said that he was looking for an apartment for his sister. He was told that he would have to speak to the person who had placed the advertisement. A man went to the apartment on July 18, 1983, knocked on the door across from the apartment and asked for the person who had placed the advertisement. He told Janice Trenholm, the woman who answered the door, that he had car trouble and that he was a friend of the other woman, and asked to use the bathroom. When Trenholm's son appeared, the man left.

Trenholm was a court reporter at the Springfield Superior Court, where she saw the defendant some weeks later. She informed the police that she recognized him from the incident of July 18. The Suffield police were informed and obtained a photograph of the defendant, which the victim in this case identified from a photographic array.

The evidence in question did not show any bad act or criminal conduct. It was offered on the question of identity, and, for this purpose, it was admissible. *State v. Pollitt*, 205 Conn. 61, 69, 530 A.2d 155 (1987).

The judgment is reversed and the case remanded for a new trial.

In this opinion the other judges concurred.