ROBERT M. BROWN *v.* COMMISSIONER OF CORRECTION
(AC 27425)

Flynn, C. J., and Bishop and McLachlan, Js.

Argued May 29—officially released October 9, 2007

*Mary H. Trainer*, special public defender, for the appellant (petitioner).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

McLACHLAN, J. The petitioner, Robert M. Brown, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly concluded that his defense counsel, Kenneth W. Simon, was effective in representing him. Specifically, the petitioner contends that his counsel was ineffective because he failed to have DNA evidence properly tested for exculpatory evidence. We affirm the judgment of the habeas court.

The following facts and procedural history are pertinent to the resolution of the petitioner's appeal. The petitioner was convicted after a jury trial of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), burglary in the first degree in violation of General Statutes § 53a-101 (a) (1) and three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a).[2] This court reversed the judgment of the trial court. See *State* v. *Brown*, 41 Conn. App. 317, 675 A.2d 1369 (1996). Our Supreme Court reversed the judgment of this court and affirmed the trial court's judgment. *State* v. *Brown*, 242 Conn. 445, 700 A.2d 1089 (1997).

On March 25, 2002, the petitioner filed an amended petition for a writ of habeas corpus, in which he raised several claims of ineffective assistance of trial counsel.

---

[1] The court thereafter granted his petition for certification to appeal.

[2] On April 15, 1994, the petitioner was sentenced to fifty-one years incarceration, execution suspended after thirty-nine years, and five years probation.

A habeas trial was held on April 28 and May 11, 2005. Subsequently, on October 13, 2005, the habeas court issued a memorandum of decision denying the petitioner the relief he sought and finding that he failed to meet his burden of proving ineffective assistance of trial counsel. This appeal followed.

The petitioner's ineffective assistance of counsel claims stem from his trial counsel's tactical decisions surrounding a pair of jeans worn by the victim on the day she was assaulted sexually. During the criminal trial, both the prosecutor and the defense believed that the victim's jeans, which had been collected by the Suffield police after she was assaulted, were lost.[3] In the middle of the trial, counsel learned that the jeans had been recovered and were located at the Suffield police department. *State* v. *Brown*, supra, 242 Conn. 452–54. The jeans were tested, and seminal fluid was found on the jeans. Id., 452. Consequently, the petitioner moved for a twenty-one day continuance in order to have DNA testing performed. Id., 453. The court denied the motion, stating that "from its knowledge of DNA testing, it was highly pessimistic of any meaningful results from the test . . . . In denying the continuance, however, the court indicated that after the verdict was returned, the [petitioner] should file a motion for a new trial and that, in connection with that motion, the court would order the testing of the jeans. The court also stated that it would delay sentencing until the testing on the jeans had been completed." (Internal quotation marks omitted.) Id., 454. The court further stated that "if the DNA test produces a result one way or the other, we can make sure that justice is served at that point, and the net impact will not be a delay at all. And, indeed, it will resolve the matter quicker than continuing this case, which would, in essence, be a mistrial. And I don't

---

[3] There was a ten year lapse in time between the incident and the criminal trial.

think it would be fair to bring a jury back in a month or two months." (Internal quotation marks omitted.) Id. Thereafter, the petitioner presented his defense. Id., 455.

Near the close of trial, outside the presence of the jury, counsel for both the state and the petitioner updated the court regarding the stain on the jeans. As the Supreme Court recounted in its decision disposing of the petitioner's direct appeal: "The state represented to the court that some preliminary blood grouping testing had been done on the jeans but that, because the victim and the [petitioner] shared the same blood grouping, the results were inconclusive with respect to identifying the [petitioner] as the depositor of the stain. The state also noted that blood subgrouping tests, which might provide more useful results, could be done but that such testing would take an additional two to three days. . . . The [petitioner] then renewed his motion for a continuance. . . . The court again denied the [petitioner's] motion for a continuance [stating that its decision was based] on the theory that subsequent testing will be done in the context of the court's orders in conjunction with a motion for a new trial, because [as the court stated] I think we have a fair and complete set of evidence that both parties were prepared to try the case on. . . . And if there is, indeed, evidence of significance that did not come before them, we'll deal with that in a motion for a new trial. . . .

"Shortly thereafter, the jury was brought in and closing arguments were presented by counsel. In closing, the [petitioner] emphasized to the jury the lack of scientific evidence connecting him to the crime. . . . The following day, the jury returned a verdict of guilty on all counts." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 242 Conn. 456–58.

"[M]ore than eight months after the jury had returned its verdict, the state and the [petitioner] appeared in

court to be heard concerning the [petitioner's] motion for a new trial. The parties at that time presented a written stipulation to the court regarding the testing of the jeans. They stipulated that, during the pretrial stages of the [petitioner's] case, they both had believed that the jeans in question had been lost by the Suffield police department and that the availability of the jeans did not come to their attention until the middle of trial. They further stipulated that a cutting from the stained area of the jeans found to contain seminal fluid protein was sent to the Federal Bureau of Investigation (FBI) laboratory in Washington, D.C., for RFLP[4] DNA testing, but that the DNA was either insufficient or too degraded to yield results. A second cutting from the stained area of the jeans was subsequently sent to the FBI laboratory with a request that both cuttings be subjected to PCR[5] DNA testing. The results of those tests revealed that the [petitioner] *could not be excluded as the depositor of the fluid on the first cutting from the stained area, but that he could be excluded as the depositor of the fluid on the second cutting.* The parties stipulated that the victim, her husband, who at the time of the assaults had been her boyfriend, and the [petitioner] were all possible donors of the DNA detected in [the first] cutting. . . .

"In explaining the meaning of the written stipulation to the court, defense counsel stated: I think that what this stipulation that we've offered to Your Honor essentially boils down to mean [is] that the *bottom line is an inconclusive result.* This does not exonerate [the petitioner]. It does not identify [the petitioner] as being the depositor of that stain. I think that, essentially, that's what our stipulation means and should mean to you."

[4] RFLP stands for restriction fragment length polymorphism. See *State* v. *Brown,* supra, 242 Conn. 462 n.19.

[5] PCR stands for polymerase chain reaction. See *State* v. *Brown,* supra, 242 Conn. 463 n.20.

(Emphasis added; internal quotation marks omitted.) Id., 462–64.

In the petitioner's amended petition for a writ of habeas corpus, he raised the claim that his "[t]rial counsel did not adequately investigate DNA evidence as it related to [the] [p]etitioner's case." During the habeas hearing, however, this claim was neither raised nor addressed, and no evidence was adduced about the claim. Instead, at the habeas hearing, the petitioner asserted that his trial counsel was ineffective because he failed to argue that the DNA results were exculpatory. The court ruled only on that issue. The petitioner now contends, for the first time on appeal, that his trial counsel was ineffective because he failed to have DNA evidence properly tested for exculpatory evidence.[6] Therefore, the claim was not presented to the habeas court to be adjudicated.

We are not bound to consider an issue "unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . The issue . . . was never raised before the habeas court, and it was not discussed in its memorandum of decision. We therefore decline to review the petitioner's claim . . . because [t]o review the petitioner's [claim] now would amount to an ambuscade of the [habeas court]." (Citation omitted; internal quotation marks omitted.) *Hunnicutt* v. *Commissioner of Correction*, 83 Conn. App. 199, 203, 848 A.2d 1229, cert. denied, 270 Conn. 914, 853 A.2d 527 (2004). Here, the petitioner, in the habeas hearing, never raised the issue of whether his trial counsel was ineffective for failure to have further tests conducted on the second cutting to exclude the husband,

---

[6] More specifically, the petitioner claims that his trial counsel was ineffective when he failed to have testing further conducted on the second cutting to exclude the husband. The petitioner asserts that if the husband had been excluded from the second cutting, it would be the key piece of information that could determine that the first cutting was exculpatory.

nor was this issue addressed in the court's memorandum of decision. We therefore decline to review the petitioner's claim regarding the alleged ineffectiveness.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] Even if the amended petition could be read as raising this claim, in fact it was neither raised nor addressed in any way at the hearing. Accordingly, it was abandoned. See *Knight* v. *Commissioner of Correction*, 81 Conn. App. 163, 164 n.1, 838 A.2d 1023 (declining to review challenges to counsel's pretrial investigation because claims specifically abandoned at habeas trial), cert. denied, 268 Conn. 905, 845 A.2d 407 (2004). If the petitioner believed, however, that the claim was somehow encompassed in the habeas decision, he should have filed a motion for articulation of the habeas opinion. See *Zahringer* v. *Zahringer*, 262 Conn. 360, 370, 815 A.2d 75 (2003) ("Our rules regarding the need to seek an articulation of the factual basis of the trial court's decision are well settled. It is the responsibility of the appellant to move for an articulation in order to clarify the basis of the trial court's decision should such clarification be necessary for effective appellate review of the issue on appeal. . . . It is, therefore, the responsibility of the appellant to move for an articulation or clarification of the record when the trial court has failed to state the basis of a decision. . . . These rules have equal import when the appellee seeks to affirm the judgment on an alternate ground." [Citations omitted.]).