## ULICES CORONA *v.* COMMISSIONER OF CORRECTION
### (AC 30425)

Bishop, Gruendel and Robinson, Js.

Argued December 4, 2009—officially released August 24, 2010

*Justine F. Miller*, special public defender, for the appellant (petitioner).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David M. Carlucci*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, J. The petitioner, Ulices Corona, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner argues the court improperly denied his claim of ineffective assistance of counsel and that the imposition of his sentence on the basis of inaccurate information contained in his presentencing report impugned his rights to due process, as enshrined in both our state and federal constitutions. We affirm the judgment of the habeas court.

The facts surrounding the petitioner's underlying conviction were set forth in the decision of this court disposing of the petitioner's criminal appeal. "On the evening of August 20, 1998, the [petitioner] was walking on Wethersfield Avenue in Hartford accompanied by three women, including his girlfriend. As they

approached the intersection of Wethersfield Avenue and Barker Street, they encountered a group consisting of the victim, Warren Huertas, and two women standing in the doorway of a market on one corner of that intersection.

"As the [petitioner's] group passed the market, the [petitioner's] girlfriend called out to Huertas by name. Huertas responded by telling her to shut up. When she continued to call out to him, Huertas ignored her. The [petitioner's] group then appeared to become angry and began shouting. The [petitioner] approached Huertas quickly, asking him who he thought that he was to be talking like that. When Huertas did not respond to the [petitioner's] comments, the [petitioner] lifted him up and threw him to the ground. The [petitioner's] companions then began to kick and hit Huertas.

"As one of Huertas' companions went to call the police, the second woman who had been standing with Huertas called out to the [petitioner's] group, telling them to leave Huertas alone. At that point, a melee erupted among the women and, apparently, the victim was temporarily forgotten. As the women fought, Huertas rose unsteadily to his feet and walked into the roadway. Goaded on by his girlfriend, the [petitioner] returned to Huertas, punched him in the face, forced him to the ground and put him in a choke hold. The [petitioner] then proceeded to stand on Huertas, sit on his chest and repeatedly strike his head against the pavement.

"The [petitioner] and his companions fled the scene at the sound of approaching sirens. When emergency help arrived, Huertas was barely breathing, was bleeding from the mouth, nose and ears, and had suffered abrasions on his upper chest. Huertas was transported to a hospital, where he died of craniocerebral trauma five days later.

"The [petitioner] initially was charged only with the crime of murder in violation of General Statutes § 53a-54a. He waived his right to a jury trial and elected to be tried by a three judge court pursuant to General Statutes § 54-82 (b). Shortly before the trial commenced, the state filed a substitute information charging the [petitioner] with two additional crimes, conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1). The [petitioner] waived his right to a jury trial on those counts as well and elected to be tried by a single judge pursuant to § 54-82 (a). As the presiding judge of the three judge court, Judge Hartmere chose to hear the two conspiracy charges. At the conclusion of the trial, the three judge court found the [petitioner] not guilty of murder, but guilty of the lesser included offense of manslaughter in the first degree. Judge Hartmere found the [petitioner] not guilty of the two conspiracy charges. The [petitioner] was committed to the custody of the commissioner of correction for a period of eighteen years." *State* v. *Corona*, 69 Conn. App. 267, 268–70, 794 A.2d 565, cert. denied, 260 Conn. 935, 802 A.2d 88 (2002).

Subsequent to the resolution of the petitioner's direct appeal, his sentence was reviewed and affirmed by the sentence review division. *State* v. *Corona*, Superior Court, judicial district of Hartford, Docket No. CR-98-526496 (May 22, 2007) (*Iannotti, Miano* and *Espinosa, Js.*). On April 22, 2002, the petitioner filed a petition for a writ of habeas corpus, and on February 28, 2008, he filed his fourth amended petition. The habeas court held a trial in connection with the amended petition on April 2, 2008, and issued its memorandum of decision denying the petition on September 11, 2008. On September 26, 2008, the court granted the petition for certification to appeal. This appeal followed.

On appeal, the petitioner first claims that the court improperly concluded that the assistance he received from his trial counsel, John O'Brien, was not ineffective because O'Brien (1) failed to correct inaccurate information contained in the petitioner's presentencing investigation report (report) and (2) failed to call certain character witnesses during the sentencing hearing who would have been favorable to the petitioner. More specifically, with respect to the first allegation of ineffective assistance, the petitioner asserts that the report prepared by the probation officer indicated that he was unable to verify statements made by the petitioner regarding his previous employment positions, a scholarship he was offered to attend the University of Hartford and counseling sessions he had attended with a psychotherapist in 2000. The petitioner contends that these factual assertions readily were verifiable and that the probation officer's statements to the contrary unfairly called into question the petitioner's credibility. With regard to the second allegation of ineffective assistance, the petitioner asserts that O'Brien's failure to call to testify at the sentencing hearing Roberto Cortez, a retired New York City police officer, who had known the petitioner for years and was available at the sentencing hearing to comment favorably on the petitioner's behalf, was an unprofessional and prejudicial error. We are not persuaded by either claim.

We begin by setting forth our standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Joseph* v. *Commissioner of*

*Correction,* 117 Conn. App. 431, 433, 979 A.2d 568, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009). Moreover, "[a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citation omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction,* 291 Conn. 62, 77, 967 A.2d 41 (2009). Finally, "[a] reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Leatherwood* v. *Commissioner of Correction,* 105 Conn. App. 644, 647, 938 A.2d 1285, cert. denied, 286 Conn. 908, 944 A.2d 979 (2008).

Turning first to the petitioner's claim that O'Brien's failure to correct the inaccuracies contained in the report constituted ineffective assistance of counsel, we conclude that, irrespective of whether the performance prong was satisfied, the petitioner has not met the prejudice prong. The record is clear that the sentencing court predicated the heft of its sentence primarily on the "extremely brutal" manner in which the petitioner killed the victim. Indeed, in the few minutes it took the court to render its sentence, it stated that "Mr. Huertas' death [occurred] in what this panel believes to have been a very brutal manner [and] was the direct result of your actions," and, "[a]gain, we consider [the] circumstances of his death to be extremely brutal. It was a horrible way to die, and for that you are responsible." Moreover, the court noted that the petitioner "had much promise";

it resolved, though, that due to "the nature of this crime, a serious sentence must be imposed." Finally, the court concluded by stating that, notwithstanding the relevant mitigating factors, "given the very serious nature of this offense and the brutal manner of death, a serious sentence is warranted." In light of these statements by the court, the petitioner's claim that his credibility was a decisive factor in the court's sentence appears to us to be implausible. Accordingly, we conclude that the petitioner has failed to demonstrate that, but for O'Brien's alleged unprofessional errors, the result of the proceeding would have been different. See, e.g., *Ruffin* v. *Commissioner of Correction*, 106 Conn. App. 396, 400, 943 A.2d 1105 (failure to correct error in presentencing investigation report not ineffective assistance because petitioner failed to demonstrate that "the discrepancy would have made a difference in the sentence imposed"), cert. denied, 286 Conn. 922, 949 A.2d 481 (2008).

In connection with the petitioner's claim that he received ineffective assistance of counsel because O'Brien failed to call favorable witnesses to testify during the sentencing hearing, we again conclude that the petitioner has failed to satisfy the prejudice prong. In the first instance, we note that there was substantial information before the sentencing court that emphasized the petitioner's attributes. In addition to the report, which noted the petitioner's genuine remorse for his actions, his lack of a criminal record, the support he received from his family and various accolades from a previous employer, the court also had before it numerous written character references from a wide variety of the petitioner's acquaintances. In view of this material and of the court's emphasis on the brutal nature of the victim's death, we conclude that any additional testimony at the sentencing hearing would have been cumulative and unlikely to change the sentence

imposed by the court. Consequently, the petitioner has not met the prejudice prong because he has not demonstrated that his sentence would have been different had those witnesses testified. See *Ramos* v. *Commissioner of Correction*, 67 Conn. App. 654, 666, 789 A.2d 502 (petitioner failed to demonstrate prejudice because this court could not "presume, on the state of [that] evidence, that there [was] a reasonable probability that [that] testimony would have altered the terms of [the petitioner's] sentence"), cert. denied, 260 Conn. 912, 796 A.2d 558 (2002).

Finally, we address the petitioner's claim, made for the first time on appeal as a separate and discrete claim, that his being sentenced on the basis of inaccurate and incomplete information deprived him of those due process rights cabined in our state and federal constitutions. We decline to review this claim because it was not distinctly pleaded in the petitioner's habeas petition as a separate count and was not decided by the habeas court.[1] "A petition for a writ of habeas corpus must set forth specific grounds for the issuance of the writ. Practice Book § 23-22 (1) specifically provides that the petition shall state 'the specific facts upon which each specific claim of illegal confinement is based and the relief requested . . . .' See *Fernandez* v. *Commissioner of Correction*, 86 Conn. App. 42, 49, 859 A.2d

---

[1] Although the defendant alleged a violation of due process as a fact in support of his claim of ineffective counsel, he did not allege a due process violation in a separate count in his habeas petition. Moreover, the defendant did not argue a due process claim during his habeas trial or in his posttrial brief to the court, and the court did not address that issue in its decision. Consequently, even if the amended petition could be read as raising this claim, it was abandoned. See *Brown* v. *Commissioner of Correction*, 104 Conn. App. 144, 150 n.7, 931 A.2d 963 ("Even if the amended petition could be read as raising this claim, in fact it was neither raised nor addressed in any way at the hearing. Accordingly, it was abandoned."), cert. denied, 284 Conn. 937, 937 A.2d 693 (2007); *Knight* v. *Commissioner of Correction*, 81 Conn. App. 163, 164 n.1, 838 A.2d 1023 (declining to review challenges to counsel's pretrial investigation because claims specifically abandoned at habeas trial), cert. denied, 268 Conn. 905, 845 A.2d 407 (2004).

948 (2004) ('The petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint.' . . . ). 'While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent, the commissioner of correction] on notice of the claims made, to limit the issues to be decided, and to prevent surprise.' " *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 300–301, 995 A.2d 641 (2010).

As previously noted, the petitioner in this case did not plead separately a due process violation in his petition, and that claim was never decided by the habeas court. That claim, therefore, is not properly before us, and our review of it would result in an unfair surprise to the respondent to have to answer in this procedural posture. Accordingly, we decline to review that claim.

The judgment is affirmed.

In this opinion the other judges concurred.