BILL ROY HENDERSON *v.* COMMISSIONER
OF CORRECTION
(AC 32039)

Bishop, Alvord and Bear, Js.

Argued March 11—officially released May 31, 2011

*Wayne A. Francis*, special public defender, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Tamara A. Grosso*, special deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Bill Roy Henderson, appeals from the judgment of the habeas court following the denial of his petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and improperly concluded that (1) trial counsel was not ineffective in failing to call certain witnesses to testify at the petitioner's criminal trial, (2) trial counsel was not ineffective for failing to offer a specific recommendation that the petitioner accept the state's plea offer and (3) the doctrine of res judicata barred the petitioner's claim that there had been a violation of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), during his criminal trial. We dismiss the appeal.

The following facts and procedural history are relevant to the petitioner's appeal. On November 5, 2001, the petitioner was found guilty, after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-54a and 53a-48, murder in violation of General Statutes §§ 53a-54a and 53a-8, and tampering with a witness in violation of General Statutes §§ 53a-151 and 53a-8. The court sentenced the petitioner to a total effective term of sixty years incarceration. Following his conviction, the petitioner filed a motion for a

new trial on the ground that the state had failed to disclose that Michael Wright, the principal witness for the state, had received a benefit from the state in exchange for his testimony against the petitioner. After a hearing, the trial court denied the motion, finding that there was no credible evidence that Wright had received a benefit in exchange for his testimony, and the petitioner, thereafter, filed a direct appeal. The petitioner's conviction was upheld by this court in *State* v. *Henderson*, 83 Conn. App. 739, 749, 853 A.2d 115, cert. denied, 271 Conn. 913, 859 A.2d 572 (2004).

On January 16, 2009, the petitioner filed an amended petition for a writ of habeas corpus, claiming that his trial counsel had rendered ineffective assistance, his appellate counsel had rendered ineffective assistance and the prosecutor had committed prosecutorial impropriety by committing a *Brady* violation.[1] The habeas court rejected each of the petitioner's claims and denied his habeas petition. Thereafter, the habeas court denied the petition for certification to appeal, and this appeal followed.

We begin by setting forth our well settled standard of review. "[W]e have previously determined that if either the petitioner or the respondent is denied a timely request for certification to appeal from a habeas court's judgment, such review may subsequently be obtained only if the appellant can demonstrate that the denial constituted an abuse of discretion. . . . We recognize that [i]n enacting [General Statutes] § 52-470 (b), the legislature intended to discourage frivolous habeas appeals. . . . A habeas appeal that satisfies one of the criteria set forth in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), is not, however, frivolous and warrants appellate review if the

---

[1] On appeal, the petitioner has not raised an issue regarding the effectiveness of his appellate counsel.

appellant can show: that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . [I]f an appeal is not frivolous, the habeas court's failure to grant certification to appeal is an abuse of discretion. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria identified in *Lozada* and adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Citation omitted; internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448–49, 936 A.2d 611 (2007).

I

The petitioner claims that the habeas court erred when it concluded that his trial counsel was not ineffective in failing to call certain witnesses, including the petitioner, to testify at trial and in failing to recommend that the petitioner accept the state's plea offer. We are not persuaded.

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to

plenary review. . . . *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 76–77, 967 A.2d 41 (2009).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 153, 662 A.2d 718 (1995). . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 435–36, 1 A.3d 1242 (2010).

## A

The petitioner claims that the court erred when it concluded that his trial counsel was not ineffective in failing to call certain witnesses, including the petitioner, to testify at trial. The petitioner argues that counsel should have called his witnesses, namely, Donald

Gaynor and Nigel Gaynor, to testify on his behalf. He further argues that he was willing to testify at trial and that "he could have provided testimonial evidence to controvert the testimony of the state's key witness." The respondent, the commissioner of correction, argues that the habeas court properly rejected these claims because the petitioner failed to present any evidence at the habeas trial as to what the Gaynors would have said had they been called to testify, and the petitioner failed to explain what testimony he would have offered had he elected to testify. Accordingly, the respondent argues, the habeas court properly rejected these claims. We agree with the respondent.

"In consideration of [a] petitioner's claim concerning the adequacy of trial counsel's investigation and the calling of alibi witnesses . . . [w]e have stated that the presentation of testimonial evidence is a matter of trial strategy. . . . The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Dunkley* v. *Commissioner of Correction*, 73 Conn. App. 819, 823–24, 810 A.2d 281 (2002), cert. denied, 262 Conn. 953, 818 A.2d 780 (2003).

Although the petitioner argues that counsel should have called the Gaynors to testify on the petitioner's behalf, he failed to present them as witnesses at the habeas trial. Without their testimony, the habeas court could not evaluate them as witnesses, nor could it assess the import of their testimony. Accordingly, the court properly found that the petitioner could not establish prejudice. See *Townsend* v. *Commissioner of Correction*, 116 Conn. App. 663, 668, 975 A.2d 1282 (insufficient showing of prejudice where petitioner offered sole testimony regarding exculpatory witness because court had no opportunity to evaluate testimony

or credibility of claimed witness), cert. denied, 293 Conn. 930, 980 A.2d 916 (2009); *Andrews* v. *Commissioner of Correction*, 45 Conn. App. 242, 247–48, 695 A.2d 20 (prejudice cannot be demonstrated with regard to trial counsel's alleged failure to interview potential witnesses where petitioner fails to call those witnesses to testify at habeas trial or offer any other proof that their testimony would have been favorable to him at criminal trial), cert. denied, 242 Conn. 910, 697 A.2d 364 (1997); see also *Taft* v. *Commissioner of Correction*, 47 Conn. App. 499, 504–505, 703 A.2d 1184 (1998). In this case, the habeas court specifically found that the representation received by the petitioner was "more than constitutionally sufficient." Additionally, the court found that it was "abundantly clear that there was no prejudice demonstrated at the habeas trial. . . . The petitioner did not present any evidence at the habeas trial that would lead this [court] to conclude that there was any likelihood that the outcome of the trial would have been any different." The record supports this conclusion.

As to the petitioner's argument that trial counsel should have called him to testify, we agree with the habeas court that the petitioner has failed to prove prejudice. It is axiomatic that "[i]t is the right of every criminal defendant to testify on his own behalf . . . and to make that decision after full consultation with trial counsel. . . . Nevertheless, the burden [is] on the petitioner to show that he was not aware of his right to testify, not on the state to show that he was." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 870–71, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005). Furthermore, although "the due process clause of the Fifth Amendment may be understood to grant the accused the right to testify, the if and when of whether the accused will testify is primarily a matter

of trial strategy to be decided between the defendant and his attorney." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 814–15, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

The record reveals that the petitioner was canvassed by the trial court during his criminal trial and that he stated that he knew he had the right to testify. The court stated that it had been informed that the petitioner had discussed this with his attorney but that the court wanted the petitioner to know that the decision as to whether to testify was the petitioner's decision. The petitioner acknowledged that he had decided not to testify. The court then confirmed with the petitioner that "there has been no pressure put upon you to decide not to testify, this is your free choice . . . . Is that what you want to do is not testify?" To which the petitioner responded: "Yes, sir." During the habeas trial, the petitioner testified that he told his attorney that he was willing to testify but that counsel thought it would be unnecessary. The petitioner, however, offered no testimony at the habeas trial as to what trial testimony he would have offered in his defense, nor did he question trial counsel as to the reasons why counsel thought the petitioner's testimony was not necessary. Accordingly, the petitioner did not demonstrate that he was prejudiced by counsel's trial strategy.

B

The petitioner next claims that the court erred when it concluded that his trial counsel was not ineffective in failing to recommend that the petitioner accept the state's plea offer. He argues that for an accused in a criminal case to make an informed decision regarding a plea offer, his counsel must make a recommendation

as to whether he thinks the accused should accept the plea offer. The respondent contends that this claim has no constitutional implications and that we, therefore, "should decline review because the right to the effective assistance of counsel does not extend to the rejection of a plea offer followed by a fair trial." On the merits of the claim, the respondent argues that counsel adequately informed the petitioner of the charges against him, of the strengths and weaknesses of the case and of the possible sentence if he was convicted; the petitioner offered no evidence that he would have accepted the plea offer if counsel had recommended it, and the evidence shows that the petitioner was adamant that he was innocent and wanted to go to trial.[2] Thus, the respondent argues, the petitioner has failed to prove either deficient performance or prejudice. We conclude that the petitioner failed to raise as an issue in his amended petition any claim regarding counsel's failure to recommend that he accept the state's plea offer; this issue, therefore, was not before the habeas court, and, thus, it could not have been decided by the habeas court.[3] See *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 166 n.2, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). Accordingly, we are unable to review the claim, because it was raised for the first time on appeal.

"A petition for a writ of habeas corpus must set forth specific grounds for the issuance of the writ. Practice

[2] The habeas court specifically found that "[t]he petitioner adamantly denied committing this crime and refused to plead guilty under any circumstances." The petitioner, in his appellate brief, did not challenge this finding as clearly erroneous.

[3] During oral argument before this court, Judge Bishop inquired as to the exact nature of the petitioner's claim. He asked counsel whether there was a claim that trial counsel had failed to explain fully the plea offer or the state's case to the petitioner, and appellate counsel replied that, although there was such a claim before the habeas court, there was no such claim on appeal. Counsel further explained that the claim on appeal was that the petitioner was entitled to a recommendation as to whether to accept the plea offer and that counsel failed to make such a recommendation.

Book § 23-22 (1) specifically provides that the petition shall state the specific facts upon which each specific claim of illegal confinement is based and the relief requested . . . ." (Internal quotation marks omitted.) *Corona* v. *Commissioner of Correction*, 123 Conn. App. 347, 354, 1 A.3d 1226, cert. denied, 299 Conn. 901, 10 A.3d 519 (2010). A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court. *Velasco* v. *Commissioner of Correction*, supra, 119 Conn. App. 166 n.2; *Toles* v. *Commissioner of Correction*, 113 Conn. App. 717, 730, 967 A.2d 576, cert. denied, 293 Conn. 906, 978 A.2d 1114 (2009); *Copeland* v. *Warden*, 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993). Appellate "review of claims not raised before the habeas court would amount to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) *Mercado* v. *Commissioner of Correction*, 85 Conn. App. 869, 871, 860 A.2d 270 (2004), cert. denied, 273 Conn. 908, 870 A.2d 1079 (2005).

In this case, we have reviewed the habeas petition, the pretrial briefs, the transcripts of the habeas trial and the posttrial briefs, and we can find no mention of a claim regarding trial counsel's alleged ineffectiveness for failing to recommend to the petitioner that he accept the state's plea offer. We also have thoroughly examined the habeas court's memorandum of decision and can find no mention of such a claim therein. Furthermore, during oral argument before this court, the petitioner's counsel stated that the habeas court had not ruled on this aspect of the claim and, in fact, that its memorandum of decision "was silent" on the issue. The habeas court could not and did not rule on the issue because it was not raised in the petition or tried before that court. On the basis of the foregoing, we are unable to review the petitioner's claim.

## II

The petitioner next claims that the habeas court improperly concluded that the doctrine of res judicata barred his claim that there had been a *Brady* violation during his criminal trial.[4] The petitioner argues that the state had a deal with Wright, its key witness, in exchange for his testimony against the petitioner and that it suppressed the existence of that deal throughout the petitioner's criminal trial.[5] He also argues that the issue was not fully litigated in the prior proceeding on his motion for a new trial because there are several additional letters that have surfaced that were not available in the prior proceeding. The respondent argues that the habeas court properly ruled that this issue was barred by the doctrine of res judicata because "[a]dditional letters to the same effect as the evidence that was already considered does not open the door to relitigating a claim that has already been decided adversely to the petitioner by a fact finder and [a] reviewing court." We agree with the respondent.

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties] on the same claim.

---

[4] "In *Brady* v. *Maryland*, supra, 373 U.S. 87, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the defendant must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the defendant, and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) *State* v. *Wilcox*, 254 Conn. 441, 452, 758 A.2d 824 (2000).

[5] "It is well established that impeachment evidence may be crucial to a defense, especially when the state's case hinges entirely upon the credibility of certain key witnesses. . . . The rule laid out in *Brady* requiring disclosure of exculpatory evidence applies to materials that might well alter . . . the credibility of a crucial prosecution witness." (Internal quotation marks omitted.) *State* v. *Esposito*, 235 Conn. 802, 815–16, 670 A.2d 301 (1996).

. . . To determine whether two claims are the same for purposes of res judicata, we compare the pleadings and judgment in the first action with the complaint in the subsequent action. . . . The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . [W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. . . .

"The doctrine [of res judicata] applies to criminal as well as civil proceedings and to state habeas corpus proceedings . . . . Although the doctrine of res judicata in its fullest sense bars claims that could have been raised in a prior proceeding, such an application in the habeas corpus context would be unduly harsh. . . . Unique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner. . . . Foremost among those considerations is the interest in making certain that no one is deprived of liberty in violation of his or her constitutional rights. . . . With that in mind, we limit the application of the doctrine of res judicata in circumstances such as these to claims that actually have been raised and litigated in an earlier proceeding." (Citations omitted; internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 86 Conn. App. 42, 44–46, 859 A.2d 948 (2004).

The following additional facts are relevant to our analysis. Before the court sentenced the petitioner in the underlying criminal case, the petitioner filed a motion for a new trial on the basis of the alleged *Brady* violation. The petitioner contended that he had newly discovered evidence, in the form of a recently written letter from Wright to an assistant state's attorney, that demonstrated that Wright, who was the state's key witness, had been promised a transfer to federal prison in

exchange for his testimony against the petitioner. See *State* v. *Henderson,* supra, 83 Conn. App. 742. The letter stated in relevant part: "One year ago you came to me and ask for a certain individual head on a platter and I deliver. One thing that I stress to you was to go to a federal prison that is decent and you assure me that this was no problem . . . ." (Internal quotation marks omitted.) Id., 742 n.3. The petitioner claimed that the state had suppressed the existence of this alleged agreement, and that the alleged agreement was exculpatory information and was material to the determination of his guilt or innocence. Id., 742–43. The trial court denied the motion for a new trial, finding that "there were no promises made, expressed or implied, to procure Wright's testimony [and] since no promises were made, the existence of those promises was not suppressed."[6] (Internal quotation marks omitted.) Id., 745. We affirmed that judgment on direct appeal.[7] Id., 750.

---

[6] During the hearing on the petitioner's motion for a new trial, Wright had testified in relevant part as follows on cross-examination by the state:

"[The Prosecutor]: . . . Was the representation ever made to you by the state's attorney's office . . . that you would be transferred to a federal prison?

"[The Witness]: What he told—what he—what [state division of criminal justice] Inspector [James C.] Rovella told me, he can't promise exactly where I will go, but they have to—being that they have to ship me, if they ship me, they'll ship me out of state, but he couldn't exactly. But I—that was my—that was my preference. But he's like, he can't promise me that because it's up to [the] department of correction.

"[The Prosecutor]: Which department of correction? Connecticut?

"[The Witness]: Yes." (Internal quotation marks omitted.) *State* v. *Henderson,* supra, 83 Conn. App. 746 n.7.

[7] In relation to the petitioner's appeal following the court's denial of his motion for a new trial, we stated: "The record shows that Wright was placed in protective custody for his own protection, a placement that he did not request and did not consider to be a benefit. Wright made it clear that he wanted to be moved out of protective custody and placed in the general population of whatever facility in which he would be serving his sentence. At the hearing, Wright stated numerous times that he was not promised placement in a different correctional facility on the basis of the outcome of the [petitioner's] trial. Moreover, the record makes clear that although he desired placement in a federal prison, Wright never received a promise

In his amended habeas petition, the petitioner claimed that he had received a package of information while in prison that contained additional evidence, which consisted of materials that were dated after the hearing on his motion for a new trial and which proved that the state had made a deal with Wright in exchange for his testimony. The habeas court found that this issue had been fully litigated, decided adversely to the petitioner, affirmed on appeal and that the issue, therefore, was res judicata. On appeal, the petitioner argues that, although the issue was litigated and decided against him in a prior proceeding, he never had the opportunity to "fairly" litigate the claim because these additional documents were not available previously. Therefore, he argues, res judicata does not apply. We conclude that there is no substantive difference between the claim raised, litigated and decided on direct appeal and that alleged in the amended habeas petition. Accordingly, the habeas court properly concluded that this claim was barred by the doctrine of res judicata.

In the petitioner's motion for a new trial, he had alleged that the state had suppressed evidence of a deal between it and Wright to transfer Wright to federal prison in exchange for his testimony against the petitioner. The petitioner presented the trial court with a letter from Wright to an assistant state's attorney in an attempt to substantiate this claim. The trial court found that there was no deal and, accordingly, that there was

of such placement by the state. We therefore conclude that the court's finding that there was no credible evidence that would show the existence of any express or tacit agreement that the state would transfer Wright to a federal prison to reward him for testifying was not clearly erroneous. We further conclude that it was not an abuse of the court's discretion to deny the [petitioner's] motion for a new trial because the allegedly newly discovered evidence did not show that an injustice was done or that it was probable that a different result at trial would have been reached." *State* v. *Henderson,* supra, 83 Conn. App. 745–46.

no suppression. This finding, along with the petitioner's conviction, was affirmed on direct appeal. In the petitioner's habeas trial, he asserted the same claim, namely, that the state had suppressed evidence that it had made a deal with Wright to testify against the petitioner in exchange for a transfer to federal prison. He asserted that he had additional documents, which were not available earlier, that proved the existence of this deal. After reviewing the record, we conclude that the habeas court properly determined that this claim was barred by the doctrine of res judicata, having already had been litigated and decided against the petitioner.

After considering the merits of the petitioner's claims on appeal, we conclude that the petitioner has failed to demonstrate that the issues raised are debatable among jurists of reason, that the court could resolve the issues in a different manner or that the questions involved are adequate to deserve encouragement to proceed further. See *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994); see also *Taylor* v. *Commissioner of Correction*, supra, 284 Conn. 448–49. Accordingly, we conclude that the petitioner has failed to demonstrate that the habeas court abused its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.