******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# PEDRO CARRASQUILLO *v.* COMMISSIONER OF CORRECTION
## (AC 42537)

Moll, Alexander and Suarez, Js.

*Syllabus*

The petitioner, who had been convicted of murder and carrying a pistol without a permit, sought a writ of habeas corpus, claiming that his trial counsel, P, rendered ineffective assistance by failing to properly advise him concerning a plea offer. The habeas court denied the petition, concluding that P had provided the petitioner with effective assistance and, thereafter, the court granted the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court properly denied the petition for a writ of habeas corpus and properly concluded that the petitioner was not deprived of the effective assistance of counsel: there was ample evidence in the record to support the court's findings that P advised the petitioner regarding the plea offer, the state's case against him, and the pros and cons of going to trial through extensive discussions, P requested several continuances to provide the petitioner with time to consider the plea offer, and there was evidence in the record that P did in fact recommend that the petitioner plead guilty; moreover, P's representation was not deficient, as the advice given by P was adequate for the petitioner to make an informed decision about whether to accept the plea offer, P having made the petitioner aware of the mandatory minimum sentence, discussed the state's evidence against him, including witness statements and warrant affidavits, and estimated that the petitioner had a 50/50 chance of success at trial; furthermore, there was no requirement that counsel specifically recommend that a client accept a plea offer, only that counsel provide an informed opinion regarding the plea offer under the circumstances of the case.

Argued January 12—officially released July 27, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *William A. Adsit*, assigned counsel, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom were *Patrick J. Griffin*, state's attorney, and *Adrienne Russo*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SUAREZ, J. The petitioner, Pedro Carrasquillo, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. The petitioner claims that the habeas court erred by concluding that he was not deprived of his right to the effective assistance of counsel during his underlying criminal trial. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's claims. In 2005, following a trial, the petitioner was convicted of murder in violation of General Statutes (Rev. to 2003) § 53a-54a (a) and carrying a pistol without a permit in violation of General Statutes (Rev. to 2003) § 29-35.[1] Attorney Diane Polan represented the petitioner throughout the pretrial, trial, and sentencing phases of his case. Michael Dearington, state's attorney for the judicial district of New Haven, prosecuted the case. In June, 2004, during a pretrial conference, the court, *Fasano, J.*, indicated that it would accept a proposed plea agreement in which the petitioner would enter a guilty plea to the charge of murder and receive the mandatory minimum sentence of twenty-five years of incarceration. In November, 2004, the petitioner formally rejected the proposed plea agreement. Following the jury's verdict of guilty and the finding of guilty by the court, on September 13, 2005, the court imposed a thirty-five year sentence on the murder count and a concurrent sentence of five years for the carrying a pistol without a permit count. The judgment of conviction was upheld following the petitioner's direct appeal to our Supreme Court. *State* v. *Carrasquillo*, 290 Conn. 209, 211, 962 A.2d 772 (2009).[2]

On September 27, 2013, the petitioner, as a self-represented litigant, filed a petition for a writ of habeas corpus. The petitioner subsequently was appointed habeas counsel. On December 26, 2017, the petitioner, through counsel, filed an amended petition. On April 24, 2018, a second amended petition was filed. In the second amended petition, the petitioner alleged, in relevant part, that he received deficient representation related to the plea offer discussed before Judge Fasano prior to the start of the criminal trial. He alleged that his confinement is unlawful because the representation provided by his trial counsel, Attorney Polan, "[fell] below the range of competency displayed by lawyers with ordinary training and skill" and that "there [was] [a] reasonable probability that, but for counsel's acts and omissions, [he] would have either accepted the plea agreement offered and received a lower sentence or would have proceeded to trial and received a more favorable outcome."[3]

The petitioner alleged that trial counsel's representa-

tion was deficient in several ways. The petitioner asserted that his trial counsel failed (1) "to adequately and meaningfully convey the terms of the plea agreement offered to the petitioner, and convey all of the possible consequences of going to trial rather than accepting the plea agreement," (2) "to ensure that the petitioner had the capacity to make an informed decision regarding whether to enter a plea or go to trial," (3) "to consult . . . with a medical professional specializing in adolescent cognitive, neurological and psychological development to assist trial counsel in understanding how to meaningfully convey the offered plea agreement to the petitioner, or to assist trial counsel in determining whether petitioner had the capacity to make an informed decision to plead or proceed to trial," (4) to ensure "that a capable individual be appointed guardian ad litem for the petitioner and ensure that the court would approve the trial counsel's recommendation that the appointed guardian ad litem make the decision whether the petitioner should enter a plea or proceed to trial," (5) "to have an appropriate adolescent psychiatric professional interview the petitioner for the purpose of offering a professional opinion on whether the petitioner had the capacity and/or was capable of making an informed decision on the issue of whether to enter a plea or proceed to trial," (6) "to adequately cross-examine the state's witnesses to reveal inconsistencies in their testimonies and to impeach their veracity," and (7) "to adequately question defense witnesses to rebut the testimony of the witnesses provided by the state." The claim raised in the present appeal is related only to the habeas court's rejection of the petitioner's claim that he received deficient representation with respect to the advice he received from trial counsel in connection with the plea offer.

On September 11, 2018, the habeas court, *Bhatt, J.*, presided over the habeas trial. The petitioner presented the testimony of two witnesses, himself and Attorney Dearington.[4] The petitioner testified about the plea offer that he had received before the murder trial and the advice Attorney Polan had given him regarding the offer. He testified that Attorney Polan had advised him that if he went to trial and lost, he could receive a sentence of between twenty-five and thirty years of incarceration. The petitioner indicated that Attorney Polan did not communicate the maximum sentence for a charge of murder. The petitioner further testified that Attorney Polan did not give him any specific recommendation regarding the plea offer, and she told him that he should make the decision "based on how [he felt] because at the end of the day, [he] was going to be the one serving the time or going to trial and going home . . . ." Attorney Polan gave the petitioner an estimate that he had a "50/50" chance at trial. The petitioner also testified that after trial, but before the verdict, Attorney Polan had indicated to him that there was another offer.[5]

There was not a long conversation about the offer, and the petitioner "just refused."

The petitioner's habeas counsel examined Attorney Dearington about the pretrial plea offer. Attorney Dearington testified that Judge Fasano indicated that he would accept the plea agreement and impose a sentence of twenty-five years of incarceration. Attorney Dearington testified that the petitioner did not accept the plea offer, and he had no recollection of making another offer to the petitioner at the time of trial. He indicated that nothing in his notes suggested that a second plea offer was made.

On November 30, 2018, in a memorandum of decision, the habeas court denied the petitioner's second amended petition for a writ of habeas corpus. The court found that "[t]he petitioner discussed the offer at length with Attorney Polan, who requested several continuances from June 15, 2004, when the offer was extended, to November 4, 2004, when the offer was rejected, in order to allow the petitioner time to consider the offer. During their discussions considering the offer, they discussed the state's evidence, which included witness statements and warrant affidavits, the pros and cons of going to trial, the weaknesses of the state's case and defenses they could pursue. Attorney Polan informed him that murder carried a mandatory minimum sentence of twenty-five years. The petitioner was aware that murder was the most serious charge in Connecticut and that it carried a significant penalty. Attorney Polan advised him, however, that if he went to trial and lost, he could expect a sentence in the range of twenty-five to thirty-five years' incarceration. . . .

"Attorney Polan advised him to make his decision based on how he felt 'because at the end of the day, [he] was going to be the one serving the time or going to trial and going home, that not to listen to nobody because it was not their decision to make.' She told him that while it was good to 'take people's opinions and ponder them,' the final decision was his to make. She estimated the odds of winning at trial as '50/50.' Neither his mother nor his stepfather provided any input about whether he should accept or reject the offer. The petitioner decided to reject the offer and go to trial based on the inconsistencies of witness statements. This decision was bolstered by the existence of a witness, a Nathaniel Grayson, who had given a statement to the police indicating that the individual who kicked in the decedent's car window was the one who shot him. This decision was made after a consideration of the terms of the offer, the evidence against him, the odds of success at trial and the potential sentence he might receive if he lost that trial. There is no dispute that had the petitioner accepted the offer, Judge Fasano would have accepted the plea and sentenced him in accordance with that offer, despite the victim's father's opposition to it. . . .

"The petitioner also testified as to the existence of a second offer, made during jury deliberation. He testified that he was brought into an anteroom in the courtroom, where Attorney Polan told him that the state was inquiring whether he'd plead to the twenty-five years. His mother was present during this meeting but did not offer any advice. He told Attorney Polan that he would not accept this offer and she did not pursue it at length because she already knew that he was not going to take this offer. . . .

"Attorney Dearington testified that there was no second offer and it was not reflected in his file. . . . It was his practice to make notes of all offers and something as significant as an offer to resolve the case mid-trial would have been noted." (Citation omitted.)

The court rejected the petitioner's claim that Attorney Polan was deficient in the advice that she gave the petitioner regarding the plea offer. The court determined that "Attorney Polan adequately advised the petitioner in order to assist him in making the decision to plead guilty or not." In reaching its decision, the court noted that Attorney Polan "requested continuances for a period of four to five months to give the petitioner time to consider the offer. She wrote him a letter laying out the offer and discussed the pros and cons of pleading with him. In fulfilling her constitutional obligations, she made him aware of the mandatory minimum sentence, the witness statements, warrant affidavits and the strengths and weaknesses of the state's case. She even estimated their chance of success as '50/50.' She further guessed that if he lost after trial, he would get no more than thirty-five years to serve, which is exactly what he was sentenced to."

Regarding the petitioner's claim that Attorney Polan did not make a specific recommendation about the offer, the court concluded that "there is no requirement that counsel have to tell their client what the client's decision should be. While counsel's duty is to provide an informed opinion as to what pleas should enter, the reasonableness of counsel's advice is to be examined in the context in which it was given, under the circumstances of the case." Further, the court determined that "Attorney Polan had extensive discussions with the petitioner about the strengths and weaknesses of the case, expressed her belief as to the likelihood of success after trial and told him that, in the end, it was his choice to make."

Alternatively, the court determined that there was evidence before it that "would suggest that Attorney Polan did, in fact, recommend that the petitioner plead guilty." The court noted that, "[a]t the petitioner's sentencing, Attorney Polan presented the testimony of Karen Brody, a psychiatrist who had examined the petitioner. During questioning by Attorney Polan, [Brody] testified that it

was her finding that the petitioner lacked judgment. The petitioner told her that it was that lack of judgment that 'caused him to go to trial as opposed to accepting the advice of counsel and perhaps taking a plea.' "

Further, the court found that "the petitioner's testimony establishes that he chose to reject the offer not because of Attorney Polan's deficient performance, but because he believed that the state's case was weak and that there was a likelihood of prevailing at trial." On cross-examination, the petitioner testified that the "inconsistencies in the witness testimonies and the existence of Grayson as a defense witness were factors in rejecting the offer." The court also rejected the petitioner's contention that Attorney Polan should have had him evaluated to determine if he was capable of making an informed decision about the plea, given his young age. Accordingly, the court denied the petitioner's second amended petition for a writ of habeas corpus.

On December 14, 2018, the habeas court granted the petitioner's certification to appeal. This appeal followed. Additional facts and procedural history will be set forth as necessary.

As a preliminary matter, we begin by addressing the contention of the respondent, the Commissioner of Correction, that the claim raised in this appeal is not reviewable because several aspects of the claim were not raised in the second amended petition and because they are inadequately briefed on appeal. The aspects of the claim at issue include the petitioner's assertions that Attorney Polan did not advise him regarding the strength of the state's case, the maximum possible sentence he could receive, or the advisability of accepting the plea offer. "A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court. . . . Appellate review of claims not raised before the habeas court would amount to an ambuscade of the [habeas] judge." (Citations omitted; internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 198, 19 A.3d 705, cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011).

We disagree with the respondent and conclude that these contentions are properly preserved for our review. In his second amended petition, the petitioner alleged that "[t]rial counsel failed to adequately and meaningfully convey the terms" of the plea offer or the "possible consequences" of rejecting the offer and going to trial. These allegations are general in nature, but they reasonably may be interpreted to encompass the petitioner's assertions that trial counsel failed to advise him regarding the strength of the state's case, the maximum possible sentence he could receive, or the advisability of accepting the plea offer. Moreover, in its memorandum of decision, the habeas court made specific factual findings regarding these allegations.[6] The respondent's contention that the petitioner's briefing of these issues was

inadequate is similarly unpersuasive. We are satisfied that the petitioner has adequately raised and briefed the claim.

We now turn to the governing legal principles applicable to the petitioner's ineffective assistance of counsel claim. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . .

"A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, the petitioner has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . .[7]

"In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish both prongs of the *Strickland* test. . . . [A] habeas court may dismiss the petitioner's claim if he fails to satisfy either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Citations omitted; footnote added; internal quotation marks omitted.) *Sewell* v. *Commissioner of Correction*, 168 Conn. App. 735, 741–42, 147 A.3d 196 (2016), cert. denied, 324 Conn. 907, 152 A.3d 1245 (2017).

In the context of a plea bargain, "[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 437, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011). "Although the defendant ultimately must decide whether to accept a plea offer or proceed to trial, this critical decision, which in many instances will affect a defendant's liberty, should be made by a represented defendant with the adequate professional assistance, advice, and input of his or her counsel. Counsel should not make the decision for the defendant or in any way pressure the defendant to accept or reject the offer, but counsel should give the defendant his or her professional advice on the best course of action given the facts of the particular case and the potential

total sentence exposure." (Emphasis omitted.) *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 800, 93 A.3d 165 (2014). "We are mindful that [c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness . . . . Accordingly, [t]he need for recommendation depends on countless factors, such as the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial compared to the guilty plea . . . whether [the] defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform [his] plea decision." (Citation omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 828, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

Although the petitioner argues that the court improperly rejected his claim of ineffective assistance of counsel, he has, in the present appeal, narrowed the specific allegations of ineffective representation on which his claim is based. The petitioner asserts that Attorney Polan's failure to adequately advise him about the plea offer constituted deficient performance. Specifically, the petitioner argues that Attorney Polan rendered ineffective assistance of counsel by "failing to reasonably explain the contours of the pretrial, court-indicated twenty-five year offer to the petitioner, including the strength of the state's case against the petitioner, the maximum possible sentence exposure and the legal and practical advisability of accepting the plea offer." We agree with the habeas court that the petitioner failed to demonstrate that Attorney Polan's advice regarding the plea offer was deficient.

First, we must address the petitioner's challenges to the court's factual findings. "To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Fields* v. *Commissioner of Correction*, 179 Conn. App. 567, 576, 180 A.3d 638 (2018).

The petitioner disputes the court's finding that Attorney Polan advised him through "extensive discussions" about the case against him. After a thorough review of the record, we conclude that there is ample evidentiary support for the court's finding. Attorney Polan requested several continuances from June 15 to November 4, 2004, in order to provide the petitioner time to consider the plea offer. During this period of time, the petitioner discussed the offer with counsel, who advised him of

the state's evidence, the pros and cons of going to trial, the weaknesses of the state's case, and possible defenses to pursue. Attorney Polan also discussed the potential sentence exposure with the petitioner, as well as his chances of success at trial. On the basis of this evidence, we conclude that the court's finding that Attorney Polan advised the petitioner through extensive discussions about the case was not clearly erroneous.

The petitioner also challenges the court's finding that "there was evidence to 'suggest that Attorney Polan did, in fact, recommend that the petitioner plead guilty.' " Contrary to the petitioner's argument, the testimony of Brody at the petitioner's sentencing supports this finding of fact. As we have discussed previously in this opinion, Brody testified that the petitioner lacked judgment and that it was his lack of judgment that caused him to go to trial "as opposed to accepting the advice of counsel and perhaps taking a plea." We conclude that the court properly found that there was evidence to suggest that Attorney Polan did recommend that the petitioner plead guilty.

Next, we turn to the court's determination that Attorney Polan's representation was not deficient. We conclude that the advice provided to the petitioner by Attorney Polan was adequate for him to make an informed decision about whether to accept the state's plea offer. The petitioner argues that Attorney Polan's representation was deficient because she failed to explain the strength of the state's case against him, advise him of the maximum possible sentence for murder, or make a recommendation as to whether he should accept the proposed plea bargain. Despite these allegations, the petitioner has not demonstrated, as required under the performance prong of *Strickland*, that Attorney Polan's advice fell below an objective standard of reasonableness. See *Strickland* v. *Washington*, supra, 466 U.S. 687–88; *Sewell* v. *Commissioner of Correction*, supra, 168 Conn. App. 741–42. The court found that, in fulfilling her constitutional obligations, Attorney Polan "made [the petitioner] aware of the mandatory minimum sentence, the witness statements, warrant affidavits and the strengths and weaknesses of the state's case." Attorney Polan wrote the petitioner a letter in which she explained the plea agreement and discussed the pros and cons of this agreement with him. She estimated that his chance of success at trial was "50/50" and told him that he would not get more than thirty-five years if he was found guilty at trial.

Additionally, there is no requirement that counsel specifically recommend that the petitioner accept a plea offer. *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 794–95. As the habeas court observed, counsel's duty is to provide an informed opinion regarding the plea offer under the circumstances of the case. In the present case, trial counsel had "extensive discus-

sions with the petitioner about the strengths and weaknesses of the case, expressed her belief as to the likelihood of success after trial, and told [the petitioner] that, in the end, it was his choice to make." Accordingly, we agree with the habeas court that Attorney Polan adequately advised the petitioner concerning the plea offer.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner elected a bench trial on the charge of carrying a pistol without a permit and a jury trial on the charge of murder.

[2] In its opinion affirming the judgment of conviction, our Supreme Court set forth the facts underlying the conviction. *State* v. *Carrasquillo*, supra, 290 Conn. 211–13. We do not repeat those facts in this opinion because they are not relevant to the issues presented in this appeal.

[3] The petition also contained a second count in which the petitioner asserted a violation of his right to due process under the sixth and fourteenth amendments to the United States constitution. In its memorandum of decision denying the petition, the habeas court stated that the due process claim did not warrant review apart from the petitioner's ineffective assistance of counsel claim, as the due process claim "is inextricably interwoven with the petitioner's claim of ineffective assistance of counsel." In the present appeal, the petitioner does not raise a claim of error related to this portion of the habeas court's ruling.

[4] At the time of the habeas trial, Attorney Dearington had retired from his position as state's attorney for the judicial district of New Haven.

[5] In the present appeal, the petitioner makes no claim in relation to this second offer. The petitioner's claim on appeal is related solely to the representation he received with respect to the pretrial plea offer.

[6] The court found that Attorney Polan made the petitioner aware of the "mandatory minimum sentence, the witness statements, warrant affidavits and the strengths and weaknesses of the state's case." The court also found that Attorney Polan speculated that if the petitioner were found guilty, he would "get no more than thirty-five years to serve . . . ." In terms of providing a recommendation that the petitioner accept the offer, the court found that there was no requirement that counsel "tell their clients what the client's decision should be."

Additionally, the court observed that there was evidence before the court that suggested that Attorney Polan did, in fact, recommend that the petitioner plead guilty. Karen Brody, a psychiatrist who had examined the petitioner, testified at the petitioner's sentencing hearing, the transcript of which was entered as an exhibit at the habeas trial. In her testimony, Brody indicated that the petitioner told her that it was his own lack of judgment that "caused him to go to trial as opposed to accepting the advice of counsel and perhaps taking a plea."

[7] In the context of a claim of ineffective assistance that pertains to the representation afforded in connection with a plea offer, our Supreme Court has held that "to establish prejudice, a petitioner need establish only that (1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).